THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ADOLPH KUBASZEWSKI, PLAINTIFF IN ERROR.

Submitted March 23, 1914—Decided November 16, 1914.

1. The defendant, while under treatment in a hospital for a gunshot wound in the head, had made an alleged confession of murder which was taken down by an officer, through an interpreter, and signed by the defendant. At the trial on an indictment for murder, the state did not put the confession in evidence, although it was marked for identification, but instead called the officer and interpreter to testify what questions were asked of, and what answers given by, the defendant. It was contended upon proceedings for review that the written confession was the best evidence of what the prisoner stated, and that it was error to admit oral evidence and withhold the writing. *Held,* that inasmuch as the defendant's counsel did not call on the state to offer the writing or object to its retention, nor object to the oral

testimony as not the best evidence, that there was no ruling or action by the trial court which the reviewing court must pass upon.

2. Where a witness is permitted to testify as to the details of an alleged confession, and counsel for the defendant interposes questions of his own, but does not object to the testimony as it is being given, but upon its conclusion moves to strike it out, the protest comes too late.

3. A criminal homicide without premeditation, but where there is at the time of committing the act an intent to do grievous bodily harm, will in the absence of circumstances reducing the grade of the crime to manslaughter, be murder in the second degree.

On error to Essex Oyer and Terminer.

For the state, *Louis Hood,* prosecutor of the pleas, and *Andrew Van Blarcom,* assistant prosecutor.

For the plaintiff in error, *Frank M. McDermit.*

The opinion of the court was delivered by

PARKER, J. The plaintiff in error was convicted of murder in the first degree. The state's case was that he had shot and killed his paramour because she had determined to leave him and go back to her husband, and that he then attempted to commit suicide. On the part of the defence it was claimed that she had tried to shoot him, and that he shot, if at all, in self defence. The entire record is certified under section 136 of the Criminal Procedure act, with specification of causes for reversal and separate assignments of error.

The state's case rested in large measure on an alleged confession taken down by an officer through an interpreter, while defendant was under treatment at the hospital. He had a bullet wound back of one ear, and it was claimed on his behalf and testified to by witnesses, that at the time the paper was written he was unable to talk. He signed the confession, but it was not put in evidence, though marked for identification. Instead, the state called the officer that wrote it to testify to the manner in which he and the interpreter communicated with the defendant, and the interpreter to testify what he

asked defendant and what statements defendant made to him. Many of defendant's answers were merely nods and shakes of the head.

It is now strenuously argued that the written confession was the best evidence of what the prisoner stated, and that the state should not have been allowed to put in oral evidence of the interview and withhold the writing. There is substantial authority for the proposition that the writing is the best evidence (*Bish. New Cr. Pro.*, § 1260) ; though elsewhere it is said that when the question is not as to the contents of the writing, but what the party said, oral proof is not objectionable. *Wigm. Ev.*, § 1243. We are not called on to decide the point, because at no stage of the trial did defendant's counsel call on the state to offer the writing or object to its retention, or object to the oral evidence as not the best, although it appeared at the outset that there was a writing. Neither did he move to strike out the oral evidence because the writing was withheld. Consequently, there is in this respect no ruling or action of the trial court of which defendant can avail himself here. *State* v. *Hummer*, 81 *N. J. L.* 430.

It is further argued that the trial court "erred in permitting the witness Kass" (who took down the written statement) "to testify to conclusions and deductions as to what plaintiff in error meant to say by his actions and motions when interrogated by said witness for the purpose of getting a confession from him," on the occasion already alluded to. The witness several times stated in his testimony that the interpreter said something in another language to the prisoner, and that the prisoner "shook his head yes." The state had to call both the scribe and the interpreter in order to cover the point that the prisoner's statement was correctly translated and put down as translated. *State* v. *Abbatta*, 64 *N. J. L.* 658; *State* v. *Banusik*, 84 *Id.* 640. Kass was called first and the interpreter afterwards. It was objected, before Kass testified to what was said, that the interpreter ought to testify first; but this was a mere question of order of proof, and is not now argued. Kass then testified, as stated, apparently

without objection.    Extracts from his testimony, with the accompanying colloquy, follow:

"The Court—Did you tell him something or did he (the interpreter) tell him something while he held the paper in his hand?

"Witness—I had the paper in my hand and read off what I had wrote.    The interpreter would tell him something, and then would tell me to go ahead.    I then went on so until I had finished what I had wrote down and the interpreter asked him something again and he shook his head yes.    Then I had the interpreter speak to him in his own language and ask him whether that statement was right and he said yes—he shook his head yes."

Further on:

"Mr. McDermit—Did he say yes or just shook his head?

"Witness—Shook his head.

"Mr. McDermit—Just shook his head?

"Witness—Yes, sir.    I then asked him would he be willing to sign this?    He shook his head yes.

"The Court—Shook his head how?

"Witness—Yes [indicating yes].

"*Q.* Go ahead.

"*A.* He raised himself up as far as he could on the cot and on to one of the iron boards that they have for the record of the patients at the hospital—this was laid on it and he signed his name to it."

At the conclusion of this testimony counsel interposed as follows:

"Mr. McDermit—Now, if the court please, at this time, I ask that all the evidence, questions and answers, be stricken out concerning the shaking of this man's head—the defendant's head—in the hospital, to statements read from some paper through the interpreter, and the interpreter in turn asking some questions of the defendant—asking him something.

"The Court—Motion denied."

To which ruling exception was allowed.

It will be observed that counsel after interposing his own

question, as to the method of communication, during the direct examination of the witness, waited until the conclusion of this branch of his testimony before raising any objection. His protest, therefore, came too late. Moreover, the assignments of error invoked alleged that the court "permitted" Kass to give this testimony, which was not the case. State v. Hummer, supra. Again, the motion attacked all of Kass' testimony, some of which was undeniably competent. Still further, no reason was advanced why the testimony ought to be struck out. We find no error, therefore, properly before us in this respect.

On the same theory the testimony of the interpreter, Okrasinski is attacked—i. e., because in describing a nod of the head as meaning "yes" and a shake as meaning "no," he was testifying to a conclusion. It may well be doubted whether any possible harm could have come of this characterizing motions of the head by way of assent and dissent, the meaning of which is a matter of common knowledge; but to be on the safe side, the court twice struck out answers of this character under objection. On the third and last occasion, the motion was to strike out the whole of a long answer as "based wholly upon a conclusion, outside of the nodding of the head and the indicating of the four fingers." This motion was too broad, as only part of the answer was based on a conclusion. The witness described in detail the dumb show of the prisoner when asked how he killed his wife, and testified, among other things, not only that the prisoner nodded his head, and held up four fingers in response to the question how many shots he fired, but that he wrote some information on an envelope that had been afterwards lost. The court reserved its ruling until proper proof of the loss of the envelope was made, and then denied the motion to strike out. Assuming that this motion was directed to all the answer except the nods and the four fingers, it still embraced the writing and the witness' description and illustration of the defendant's motions and actions, upon all which the jury could put their own construction and which were proper to submit to them. The court was therefore justified in refusing to strike out the answer.

Proceeding with the brief of counsel (there was no oral argument), we find an attack on part of the charge, consisting of a comment on the evidence; as to which it is necessary to say only that it is not assigned for error or as a cause for reversal. The calling of a witness named Hamilton in rebuttal is argued under an assignment of error. But we find there was no objection at the trial to the rebuttal feature of his testimony, but the complaint was that the state was contradicting its own witness; something it had every right to do. *Skellinger* v. *Howell,* 8 *N. J. L.* 310; *Ingersoll* v. *English,* 66 *Id.* 463; *Moebius* v. *Williams,* 84 *Id.* 540.

Finally, it is claimed, that the court erred in refusing to charge two requests, as follows:

*First.* That the defendant cannot be convicted of any offence unless the jury find from the evidence that the accused had a specific design to effect the death of the deceased. The jury must find beyond a reasonable doubt that such was the defendant's specific design.

*Second.* That to convict the accused of murder, one kind of malice is essential, viz., premeditated design to take life; no other quality of malice is sufficient, and this kind of malice must be proved affirmatively to the satisfaction of the jury beyond a reasonable doubt.

Neither request was well founded in point of law. Under the indictment for murder the prisoner might have been convicted of murder in the second degree or of manslaughter; and it is familiar law that a killing with merely the intent to do grievous bodily harm constitutes murder in the second degree (*State* v. *Agnew,* 10 *N. J. L. J.* 165, 168); while a killing in the heat of passion under physical provocation and with no intent to take life would be manslaughter.

We find no error presented on the record and the judgment of the Essex Oyer will therefore be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, HEPPENHEIMER, WILLIAMS, JJ. 11.

*For reversal*—GARRISON, KALISCH, JJ. 2.